WILLIAM R. URGA, ESQ., #1195
Email: wru@juwlaw.com
DAVID J. MALLEY, ESQ., #8171
Email: djm@juwlaw.com
JOLLEY URGA WOODBURY HOLTHUS & ROSE
330 S. Rampart Blvd., Suite 380
Las Vegas, Nevada 89145
Telephone: (702) 699-7500
Facsimile: (702) 699-7555

JOSEPH S. SIMMS, ESQ. (*Pro Hac Vice Pending*)
Ohio Bar #: 0066584
jsimms@koehler.law
MALLORY ROHR, ESQ. (*Pro Hac Vice Pending*)
Ohio Bar #: 0096259
mrohr@koehler.law
KOEHLER FITZGERALD LLC
1111 Superior Avenue East – Suite 2500
Cleveland, Ohio 44114
Telephone: 216.539.9370
Facsimile: 216.916.4369

*Attorneys for Defendant Westminster Financial Securities, Inc.*

JOLLEY URGA WOODBURY HOLTHUS & ROSE attorneys at law
330 S. RAMPART BOULEVARD, SUITE 380, LAS VEGAS, NV 89145
TELEPHONE: (702) 699-7500 FAX: (702) 699-7555

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| MARY KREVOSH,<br><br>Plaintiff,<br><br>v.<br>WESTMINSTER FINANCIAL SECURITIES, INC.,<br><br>Defendant. | CASE NO. 2:18-cv-01434-JCM-CWH<br><br>**DEFENDANT'S MOTION TO COMPEL ARBITRATION** |

This motion seeks an order from this Honorable Court compelling arbitration of all matters between Plaintiff Mary Krevosh ("Plaintiff" or "Krevosh") and Defendant Westminster Financial Securities, Inc. ("Defendant" or "Westminster"). The Parties entered into several written agreements, all of which require arbitration of their disputes. Westminster asks the Court to compel compliance with those agreements pursuant to the Federal Arbitration Act, as well as Nevada's Uniform Arbitration Act.

JOLLEY URGA WOODBURY HOLTHUS & ROSE attorneys at law
330 S. RAMPART BOULEVARD, SUITE 380, LAS VEGAS, NV 89145
TELEPHONE: (702) 699-7500 FAX: (702) 699-7555

I. FACTUAL BACKGROUND

In April 2017, Krevosh instituted an arbitration proceeding against Westminster with the Financial Industry Regulatory Authority ("FINRA") by filing a Statement of Claim alleging various acts of wrongdoing and seeking an award of damages against Westminster.[1] Among other things, Krevosh claimed that she and her husband purchased a bronze statue that was located in Portage County, Ohio in August 2012 from a former Westminster financial advisor, Louis Telerico (who was Mr. Krevosh's first cousin), for $200,000, but did not receive the statue and consequently incurred $200,000 in losses. In actuality, Krevosh and her husband entered into the agreement to purchase the statue from Telerico's mother, who was the owner of the statue, not Telerico. Krevosh also claimed damages in the arbitration relating to 26 acres of land located in Portage County, Ohio that she purchased from Telerico, as well as damages relating to loans Krevosh claims she made to Telerico and his wife and his mother in Portage County, Ohio

During the pendency of Krevosh's arbitration, Westminster requested that Krevosh produce, among other things, all documents and information relating to the purchase of the statue, all documents she provided to or received from Telerico or any other third party relating to the statue, all documents and information relating to any money she provided to or received from Telerico or anyone else relating to the statue, and all documents and information relating to her claimed losses.

Despite specific requests for all documents and information relating to the statue transaction, Krevosh never disclosed that the purchase agreement for the statue was rescinded or that the purchase price was reimbursed to her and her husband. Rather, she maintained throughout the matter that she had produced all documents and information in her possession,

[1] Krevosh stated in her Statement of Claim against Westminster that "Claimant brings this arbitration proceeding before FINRA pursuant to FINRA Rule 12200, which requires a member or associated person to arbitrate disputes arising out of the associated person or member's business activity **or the contract entered into between the parties**." (See page 1 of Krevosh's Statement of Claim, attached as Exhibit A) (emphasis added).

JOLLEY URGA WOODBURY HOLTHUS & ROSE attorneys at law
330 S. RAMPART BOULEVARD, SUITE 380, LAS VEGAS, NV 89145
TELEPHONE: (702) 699-7500 FAX: (702) 699-7555

custody and control relating to the statue, and she continued to maintain throughout the pendency of the case that she had lost $200,000 relating to the purchase of the statue.

In or about June 2018 after discovery had been concluded in the arbitration case, Krevosh filed an Amended Statement of Claim with FINRA, in which she again accused Westminster of various acts of wrongdoing and sought an award of damages from Westminster. Among other things, Krevosh reiterated her claim that she and her husband purchased a bronze statue in August 2012 from Telerico for $200,000 but did not receive the statue and consequently incurred $200,000 in losses. The purported losses attributable to the statue transaction constituted a material portion (over 42%) of the total amount of losses Krevosh was seeking in the arbitration.

Insofar as Plaintiff provided no documents or information in discovery showing that she rescinded the statue transaction and received reimbursement of the purchase price, Westminster was induced to believe, and did reasonably and justifiably believe, that Krevosh's repeated and consistent claims and representations that she spent $200,000 on the statue and received nothing in return were truthful and accurate. Based on Westminster's reasonable and justifiable reliance on Krevosh's claims, allegations, disclosures and document production suggesting that she had spent $200,000 on the statue and received nothing in return, Westminster participated in good faith in settlement negotiations with Krevosh.

Immediately following the conclusion of those settlement discussions, Westminster came into possession of evidence (that had not been disclosed by Krevosh in the arbitration) suggesting that the claims and allegations Krevosh had been asserting about the statue were false. Specifically, the documents received by Westminster appeared to show that Krevosh actually rescinded the statue transaction in September 2012 (i.e. one month after the purchase agreement) and was reimbursed many years ago for the money she claimed in the arbitration to have lost. (A copy of the rescission agreement bearing Krevosh's signature that she failed to

produce in discovery in the arbitration is attached as Exhibit B). Westminster confronted Krevosh with the documentation and asked her to provide clarification, including (1) whether she either confirms or denies the authenticity of her signature on the rescission agreement; and (2) whether she admits or denies actually receiving the checks showing repayment of the statue funds.

Krevosh was informed at that time that in the absence of answers to those questions and clarification of the circumstances of her failure to disclose this information in the arbitration, it would be assumed that her nondisclosure and misrepresentations were intentional, and that Westminster's participation in settlement discussions was, therefore, procured by fraud. Despite being provided with an opportunity to explain the evidence that appears to have been fraudulently withheld, Krevosh refused to do so, choosing instead to file the instant lawsuit in what appears to be an attempt to publicly damage Westminster's reputation.

Contemporaneously with the filing of the lawsuit, Krevosh, through her counsel also contacted FINRA to request the institution of suspension proceedings against Westminster and caused and/or allowed an article to be published on www.investmentnews.com about it. In both instances, however, Krevosh purposely withheld material evidence (including, among other things, the documentation and discussions described herein) in what appears to be an improper and unlawful attempt to exert undue pressure on Westminster by making false allegations to purposely damage its reputation with the public and the self-regulatory organization of which it is a member.

Westminster answered the complaint filed by Krevosh, denying all allegations of wrongdoing asserted therein, and set forth its own counterclaims against Krevosh seeking a declaration as to the fraudulent nature of Krevosh's actions and an award for damages resulting from her fraudulent misconduct. In pertinent part, Westminster asserted that the claims are

JOLLEY URGA WOODBURY HOLTHUS & ROSE attorneys at law
330 S. RAMPART BOULEVARD, SUITE 380, LAS VEGAS, NV 89145
TELEPHONE: (702) 699-7500 FAX: (702) 699-7555

JOLLEY URGA WOODBURY HOLTHUS & ROSE attorneys at law
330 S. RAMPART BOULEVARD, SUITE 380, LAS VEGAS, NV 89145
TELEPHONE: (702) 699-7500 FAX: (702) 699-7555

subject to a mandatory arbitration agreement between the parties. Thus, due to the written agreements between Krevosh and Westminster which, as detailed below, state that all disputes between them must be arbitrated, all matters pending herein should be compelled to arbitration and this matter should be dismissed or stayed pending arbitration.[2] The points of law and analysis below demonstrate why the Court should compel arbitration.

## II. ARGUMENT

### a. Standard for Motion to Compel Arbitration

#### *i. The Standard under the Federal Arbitration Act*

The Federal Arbitration Act, 9 U.S.C. §1 et seq. (the "FAA"), governs the enforcement of arbitration agreements. 9 U.S.C. §§ 1-2; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 398 U.S. 395, 402 (1967). The FAA established a national public policy favoring arbitration. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011). An arbitration agreement is enforceable under the FAA if it is in writing, relates to a commercial or maritime transaction, and manifests an agreement between the parties to arbitrate a dispute. 9 U.S.C § 1.

One of the primary purposes of the FAA is to ensure enforcement of private arbitration agreements according to their own terms. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l. Corp.*, 559 U.S. 662, 682 (2010). In determining whether the FAA applies to an arbitration agreement, courts must weigh facts in accordance with the "liberal" policy favoring arbitration. *Cecala v. Moore*, 982 F.Supp. 609 (N.D. Ill. 1997). All doubts whether a dispute is arbitrable must be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003); *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775 (10th Cir. 1998). "[T]he

[2] Of course, briefing on Plaintiff's recently filed Motion to Dismiss and premature Motion for Summary Judgment, and any rulings thereon, should be stayed pending arbitration as well.

JOLLEY URGA WOODBURY HOLTHUS & ROSE attorneys at law
330 S. RAMPART BOULEVARD, SUITE 380, LAS VEGAS, NV 89145
TELEPHONE: (702) 699-7500 FAX: (702) 699-7555

preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which the parties [have] entered, a concern which requires that we rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, (1985); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 625-26 (1985).

"The FAA 'leaves no place for the exercise of discretion' if there is a valid, applicable agreement, so arbitration must be compelled even if some claims are subject to arbitration and some are not and the maintenance of separate proceedings may be inefficient." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217-18 (1985).

*ii. The Standard under the Nevada Uniform Arbitration Act*

Nevada enacted the Uniform Arbitration Act ("Act") as NRS 38.206 et. seq. The purpose of the Act is to preclude a court from intervening into the merits of a dispute for which rbitration has been contractually agreed. NRS 38.219 states:

> (1) An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.
>
> (2) The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate.
>
> (3) An arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable.
>
> (4) If a party to a judicial proceeding challenges the existence of, or claims that a controversy is not subject to, an agreement to arbitrate, the arbitral proceeding may continue pending final resolution of the issue by the court, unless the court otherwise orders.

Like federal courts, "Nevada courts resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration." *Truck Ins. Exchange v. Palmer J. Swanson, Inc*., 189 P.3d 656, 659 (2008). Nevada's strong public policy favors the enforcement of arbitration provisions. "[A]rbitration clauses are to be construed liberally in favor of

JOLLEY URGA WOODBURY HOLTHUS & ROSE attorneys at law
330 S. RAMPART BOULEVARD, SUITE 380, LAS VEGAS, NV 89145
TELEPHONE: (702) 699-7500 FAX: (702) 699-7555

arbitration." *Kindred v. Second Judicial Dist. Court ex rel. County of Washoe*, 116 Nev. 405, 411, 996 P.2d 903, 907 (Nev. 2000). "Therefore, we are hesitant to deprive the parties of the benefits of arbitration they have bargained for, and arbitration clauses are to be construed liberally in favor of arbitration…Nevada overwhelmingly favors arbitration." *Id.* at 207.

b. The Arbitration Agreements Are Valid and Enforceable

The arbitration agreements between Krevosh and Westminster are valid and enforceable contracts. Both federal and state law support a finding that if there is a valid agreement, it must be enforceable. "[A]rbitration is a matter of contract." See *Rent–A–Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2776 (2010). "On motion of a person showing an arbitration agreement and alleging another person's refusal to arbitrate pursuant to the agreement… the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate." NRS 38.221.1(b). Nevada Courts consistently enforce unambiguous contracts according to their plain language. *Renshaw v. Renshaw*, 96 Nev. 541, 611 P.2d 1070 (1980). Here, it is beyond dispute that the parties entered into valid and enforceable unambiguous agreements to arbitrate "all disputes" between them.

Specifically, Krevosh and her husband signed new account forms for two accounts they opened at Westminster (one in April 2012 and the other in October 2012). Each form contained an unambiguous arbitration clause stating in all capital letters:

> ANY CONTROVERSY BETWEEN YOU AND US OR PERSHING LLC AND US SHALL BE SUBMITTED TO ARBITRATION BEFORE AND ONLY BEFORE THE FINANCIAL INDUSTRY REGULATORY AUTHORITY.[3]

[3] Copies of the signed April 2012 and October 2012 New Account Forms (each of which states immediately above Krevosh's signature that "I ACKNOWLEDGE THAT THIS AGREEMENT CONTAINS A PREDISPUIE ARBITRATION CLAUSE IN PARAGRAHS 13 AND 14 ON PAGE 8") are attached as Exhibits C and D, respectively, and incorporated herein by reference. A legible copy of the referenced clause is attached as Exhibit E and incorporated herein by reference.

JOLLEY URGA WOODBURY & HOLTHUS & ROSE attorneys at law
330 S. RAMPART BOULEVARD, SUITE 380, LAS VEGAS, NV 89145
TELEPHONE: (702) 699-7500 FAX: (702) 699-7555

In October 2012, Krevosh and her husband also signed a Margin Agreement, which, in pertinent part, provided in bold all capital lettering:

> **THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE. BY SIGNED AN ARBITRATION AGREEMENT THE PARTIES AGREE AS FOLLOWS:**
>
> ➢ **ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHTS TO A TRIAL BY JURY, EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORUM IN WHICH A CLAIM IS FILED.**
>
> *******
>
> **ANY CONTROVERSY BETWEEN YOU AND US SHALL BE SUBMITTED TO ARBITRATION BEFORE THE NEW YORK STOCK EXCHANGE, INC. ANY OTHER NATIONAL SECURITIES EXCHANGE ON WHICH A TRANSACTION GIVING RISE TO THE CLAIM TOOK PLACE (AND ONLY BEFORE SUCH EXCHANGE, OR THE FINANCIAL INDUSTRY REGULATORY AUTHORITY …**

(See October 2012 Joint Account Margin Agreement, attached as Exhibit F and incorporated herein by reference, at page 2) (emphasis in the original).[4]

Krevosh again signed an unambiguous arbitration agreement on November 18, 2013. Specifically, she affixed her signature immediately below the following language appearing in bold all capital print:

> **I ACKNOWLEDGE AND AGREE THAT THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE, IN PARAGRAPHS 13 AND 14 ON PAGE 13. I HEREBY ACKNOWLEDGE RECEIPT OF THIS NEW ACCOUNT AGREEMENT WITH PREDISPUTE ARBITRATION CLAUSE THEREIN.**

(See November 18, 2013 Agreement, attached as Exhibit G and incorporated herein by reference, at page 12) (emphasis in the original). The plain unambiguous language of the relevant portion of the agreement reads:

---

[4] The Margin Agreement, between Krevosh and Westminster's clearing firm Pershing LLC, expressly states at page 1 that Westminster is "intended to have the benefit and is a third-party beneficiary of this agreement."

> **ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY, EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORUM IN WHICH A CLAIM IS FILED.**
>
> ***
>
> **ANY CONTROVERSY BETWEEN YOU … AND US SHALL BE SUBMITTED TO ARBITRATION BEFORE AND ONLY BEFORE THE FINANCIAL INDUSTRY REGULATORY AUTHORITY.**

(Exhibit G, page 13) (emphasis in the original).[5]

In connection with the 2013 agreement, Krevosh also signed a Margin Agreement, which, like the Margin Agreement from 2012, provided:

> **THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE. BY SIGNED AN ARBITRATION AGREEMENT THE PARTIES AGREE AS FOLLOWS:**
>
> ➢ **ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHTS TO A TRIAL BY JURY, EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORUM IN WHICH A CLAIM IS FILED.**
>
> ***
>
> **ANY CONTROVERSY BETWEEN YOU AND US SHALL BE SUBMITTED TO ARBITRATION BEFORE THE NEW YORK STOCK EXCHANGE, INC. ANY OTHER NATIONAL SECURITIES EXCHANGE ON WHICH A TRANSACTION GIVING RISE TO THE CLAIM TOOK PLACE (AND ONLY BEFORE SUCH EXCHANGE, OR THE FINANCIAL INDUSTRY REGULATORY AUTHORITY …**

[5] The arbitration agreement provides that New York law shall apply. To the extent this Court is inclined to apply New York law to the question of arbitrability of the dispute between the parties, New York law is in accord. *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir.2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)) (the preference for arbitration is so strong that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration).

JOLLEY URGA WOODBURY HOLTHUS & ROSE attorneys at law
330 S. RAMPART BOULEVARD, SUITE 380, LAS VEGAS, NV 89145
TELEPHONE: (702) 699-7500 FAX: (702) 699-7555

JOLLEY URGA WOODBURY HOLTHUS & ROSE attorneys at law
330 S. RAMPART BOULEVARD, SUITE 380, LAS VEGAS, NV 89145
TELEPHONE: (702) 699-7500 FAX: (702) 699-7555

(See 2013 Margin Agreement, attached as Exhibit H and incorporated herein by reference, at page 2) (emphasis in the original).[6]

Since courts are bound by language that is clear and free of ambiguity and cannot, using the guise of interpretation, distort the plain meaning of the agreement, this Court should grant this motion pursuant to its authority given by the FAA and NRS 38.221.1(b) because the agreements between the parties to arbitrate their disputes are clear and unambiguous and require arbitration for "any controversy" between them. *See Watson v. Watson*, 95 Nev. 495, 496 P.2d 507 (1979).

c. <u>Plaintiff's Claims Fall Within the Scope of the Arbitration Clause</u>

"To require arbitration, [the Plaintiff's] factual allegations need only 'touch matters' covered by the contract containing the arbitration clause ... " *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721, 1999 U.S. App. LEXIS 8273 (1999) (arbitration clause providing for arbitration of all disputes "arising in connection with" parties' development agreement broadly construed as reaching every dispute between parties having significant relationship to agreement and all disputes having their origin or genesis in agreement). Here, there can be no dispute that the language in the clause is very broad. See, e.g., *Prima Paint Corp. v. Flood & Conklin MIg. Co.*, 388 U.S. 395, 397 (1967) ("'any controversy or claim arising out of or relating to this Agreement' is a broad arbitration clause"). Such claims "touch upon" the parties' agreement because they "stem from the parties' relationship." *Bosinger v. Phillips Plastics Corp.*, 57 F. Supp. 2d 986,993 (S.D. Cal. 1999). Further, courts have held that claims "touch upon" the parties' agreement where Plaintiff's claims relate to a broker-dealer relationship that would not have existed "but for" the agreement. *Id.*

---

[6] The 2013 Margin Agreement, like the 2012 one before it, expressly states at page 1 that Westminster is "intended to have the benefit and is a third-party beneficiary of this agreement."

JOLLEY URGA WOODBURY HOLTHUS & ROSE attorneys at law
330 S. RAMPART BOULEVARD, SUITE 380, LAS VEGAS, NV 89145
TELEPHONE: (702) 699-7500 FAX: (702) 699-7555

Here, the arbitration agreements broadly provide that "[a]ny controversy between you … and us shall be submitted to arbitration". Plaintiff's claims fall squarely within the scope of these broad arbitration clauses – it is a controversy between the two parties to the agreement. Plaintiff's claims relate to a relationship between Westminster and herself that would not have existed "but for" the agreements. Therefore, Plaintiff's allegations plainly "touch matters" covered by the agreement. Accordingly, Plaintiff's claims are properly the subject of arbitration.

## III. CONCLUSION

Based on the foregoing, Westminster respectfully request that the Court compel the parties to arbitrate their dispute in accordance with the unambiguous language of the arbitration agreements between them and dismiss this matter or stay it pending arbitration pursuant to Section 3 of the FAA and NRS 38.221, which permit this Court to stay this action pending the conclusion of arbitration between the parties.

Dated this 31st day of August, 2018.

JOLLEY URGA WOODBURY HOLTHUS & ROSE

By: */s/ William R. Urga*
WILLIAM R. URGA, ESQ.
Nevada Bar No. 1195
DAVID J. MALLEY, ESQ.
Nevada Bar No. 8171
330 S. Rampart Blvd., Suite 380
Las Vegas, Nevada 89145

KOEHLER FITZGERALD LLC
Joseph S. Simms (Ohio Bar #: 0066584)
jsimms@koehler.law
Mallory Rohr (Ohio Bar #: 0096259)
mrohr@koehler.law
1111 Superior Avenue East – Suite 2500
Cleveland, Ohio 44114
216.539.9370 – phone
216.916.4369 – fax
*Pro Hac Vice Motions Pending*
Attorneys for Defendant
Westminster Financial Securities, Inc.

JOLLEY URGA WOODBURY HOLTHUS & ROSE | attorneys at law
330 S. RAMPART BOULEVARD, SUITE 380, LAS VEGAS, NV 89145
TELEPHONE: (702) 699-7500 FAX: (702) 699-7555

**CERTIFICATE OF SERVICE**

This will hereby certify that I am employed in the County of Clark, State of Nevada, am over the age of 18 years and not a party to this action. My business address is that of Jolley Urga Woodbury Holthus & Rose, 330 S. Rampart Blvd., Suite 380, Las Vegas, Nevada 89145.

This is to certify that on the 31st day of August, 2018, I electronically filed **Defendant's Motion to Compel Arbitration** with the Clerk of Court using the CM/ECF system, which will cause the document to be served upon all current counsel of record.

_*/s/ Linda Schone*_ _
An employee of Jolley Urga Woodbury Holthus & Rose