UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MARY KREVOSH, | Case No. 2:18-cv-01434-JCM-CWH |
| Plaintiff(s), | ORDER |
| v. | |
| WESTMINSTER FINANCIAL SECURITIES, INC., | |
| Defendant(s). | |

Presently before the court is defendant Westminster Financial Securities, Inc.'s ("Westminster") motion to compel arbitration. (ECF No. 17). Plaintiff Mary Krevosh ("Krevosh") filed a response (ECF No. 22), to which defendant replied (ECF No. 27).

**I.   Facts**

Westminster is a broker-dealer that is registered with the Securities and Exchange Commission ("SEC") and is a member of the Financial Industry Regulatory Authority ("FINRA"). (ECF No. 1 at 2). Upon opening two new investing accounts with Westminster in 2012, Krevosh and her husband signed new account forms, each of which contained an arbitration clause stating, in relevant part:

> ANY CONTROVERSY BETWEEN YOU AND US OR PERSHING LLC AND US SHALL BE SUBMITTED TO ARBITRATION BEFORE AND ONLY BEFORE THE FINANCIAL INDUSTRY REGULATORY AUTHORITY.

(ECF No. 17-3, 17-4, 17-5).

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

In October 2012, Krevosh and her husband also signed a margin agreement, which provides, in pertinent part:

> THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE. BY SIGNED [sic] AN ARBITRATION AGREEMENT THE PARTIES AGREE AS FOLLOWS:
> - ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHTS TO A TRIAL BY JURY, EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORUM IN WHICH A CLAIM IS FILED.

(ECF No. 17-6). In November 2013, Krevosh and her husband signed additional Westminster agreements with similar arbitration clauses (collectively, the "arbitration agreements"). (ECF No. 17-7, 17-8).

In April 2017, Krevosh initiated an arbitration proceeding (the "2017 arbitration") against Westminster through FINRA, alleging various acts of wrongdoing and seeking an award of damages. (ECF No. 17 at 2). Among other things, Krevosh alleged that she and her husband purchased a bronze statue from former Westminster financial advisor Louis Telerico for $200,000, but did not receive the statue and consequently incurred $200,000 in losses. *Id.* Krevosh stated in her FINRA claim that she initiated arbitration with Westminster pursuant to "FINRA rule 12200, which requires a member or an associated person to arbitrate disputes arising out of the associated person or member's business activity or the contract entered into between the parties." (ECF No. 17-1 at 1).

During the pendency of the arbitration, Westminster requested that Krevosh produce all documents and information relating to the purchase of the statue, all documents and information relating to money provided or received in relation to the purchase, and all documents and information relating to her claimed losses. *Id.* On or about June 2018, after the close of discovery in the arbitration case, Krevosh filed an amended statement of claim with FINRA, reiterating her claim regarding the purchase of the statue. *Id.* at 3.

On May 18, 2018, the parties attended a mediation conference in Chicago, Illinois, before mediator Jeffrey Grubman ("mediator Grubman"). (ECF No. 22 at 7). The parties were unable to reach a settlement during the mediation. *Id.* However, the parties continued their negotiations

and finally reached an agreement on July 20, 2018. *Id.* The agreement was memorialized by an email from mediator Grubman to the parties' respective counsel (the "settlement email"). *Id.* The settlement email stated the basic terms of the agreement and indicated that a draft settlement agreement would be prepared thereafter. (ECF No. 22-1). On the same day, Krevosh's counsel filed a letter of settlement with FINRA to inform it that a settlement had been reached and that the arbitration case should be closed. (ECF No. 22 at 8).

After the settlement was reached, Westminster came into possession of evidence that had not been previously disclosed by Krevosh, which suggested that her claims regarding the statue were false. (ECF No. 17 at 3). Specifically, Westminster discovered that Krevosh rescinded the transaction to purchase the statue in September 2012 and was reimbursed for the money she claimed to have lost. (ECF No. 17 at 3); (ECF No. 17-2).

When Westminster confronted Krevosh with this newly discovered information, Krevosh refused to explain the discrepancy. (ECF No. 17 at 4). Instead, Krevosh filed the instant suit on August 2, 2018, seeking to enforce the 2017 arbitration "settlement agreement."[1] (ECF No. 1). On August 17, 2018, Westminster filed its answer and counterclaims against Krevosh, asserting claims for fraud and abuse of process. (ECF No. 7).

On August 31, 2018, Westminster filed the instant motion to compel arbitration, which the court now considers. (ECF No. 17).

**II.    Legal Standard**

The Federal Arbitration Act ("FAA") provides for the enforcement of arbitration agreements in any contract affecting interstate commerce. 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). A party to an arbitration agreement can invoke his or her rights under the FAA by petitioning federal courts to direct that "arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. When courts grant a petition to compel arbitration, the FAA requires stay of litigation "until such arbitration has been had[.]" *Id*. at § 3.

---

[1] Although the settlement email indicated that a settlement had been reached, Westminster declined to consummate the settlement with a formal agreement, as it learned of Krevosh's fraudulent behavior before a finalized agreement could be executed. (ECF No. 27 at 3).

**James C. Mahan
U.S. District Judge**

- 3 -

The FAA embodies a clear policy in favor of arbitration. *AT&T Mobility*, 563 U.S. at 339. Courts must rigorously enforce arbitration agreements. *Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA leaves no place for courts to exercise discretion, but instead mandates courts to enforce arbitration agreements. *See Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985).

However, arbitration is a "matter of contract" and the FAA does not require a party to arbitrate "any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) (quotes and citation omitted). When determining whether a party should be compelled to arbitrate claims: courts engage in a two-step process. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The court must determine: (1) whether a valid agreement to arbitrate exists, and if it does; (2) whether the agreement encompasses the dispute at issue. *Id.*

**III.   Discussion**

Westminster argues that the court should compel plaintiff to submit her claims to arbitration pursuant to the broad language of the arbitration agreements signed by Krevosh and her husband. (ECF No. 17 at 10). According to Westminster, the instant dispute falls squarely within the scope of the arbitration agreements, as they encompass "any controversy between you [Krevosh] and us [Westminster] . . ." *Id.* at 8. *See* (ECF No. 17-3–8).

Krevosh counters that the arbitration agreements do not apply to the instant dispute. (ECF No. 22). Rather, Krevosh submits that the applicable "agreement" is the settlement email from mediator Grubman, which did not contain an arbitration provision. *Id.* Additionally, Krevosh relies on Nevada law for the proposition that the arbitration agreements are not applicable because they were not contemporaneously executed with or referenced in the settlement email, and did not concern the same subject matter. *Id.* at 12. *See Whitemaine v. Aniskovich*, 183 P.3d 137, 141 (Nev. 2008). Finally, and in the alternative, Krevosh argues that Westminster waived its right to arbitration, if such a right exists. *Id.* at 16.

As a preliminary matter, although both parties cite Nevada's Uniform Arbitration Act in addition to the FAA, the court will evaluate Westminster's motion pursuant to the FAA only, as federal substantive law governs the question of arbitrability. *See Simula, Inc.*, 175 F.3d at 719 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

 a. *Arbitrability of claims*

In addressing a motion to compel arbitration, the court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130 (citing 9 U.S.C. § 4; *Simula, Inc.*, 175 F.3d at 719–20).

  ***i. Existence of a valid arbitration agreement***

Here, Krevosh does not dispute that the arbitration agreements were validly signed and executed at the time she and Westminster entered into them. *See* (ECF No. 22). Rather, she argues that those agreements were superseded by the parties' settlement email, which did not contain an arbitration provision. *Id.* Accordingly, Krevosh submits that there is no valid agreement to arbitrate that can be applied to the instant dispute. *Id.*

However, Krevosh's arguments are deficient for several reasons. First, as Westminster points out, there is no settlement agreement between the parties that would supersede the arbitration agreements. The email from mediator Grubman regarding the 2017 arbitration proceedings upon which Krevosh relies is just that—an email.[2] *See* (ECF No. 22-1). Indeed, Westminster learned of Krevosh's fraudulent conduct before a finalized settlement agreement could be executed, prompting Westminster to rescind its offer of settlement and thus resulting in the instant suit.[3] (ECF No. 27 at 3).

Second, Krevosh's reliance on Nevada law for the proposition that the arbitration agreements cannot be applied to this dispute because they were not concurrently executed with

---

[2] The email itself specifically states that a draft settlement agreement will be prepared at a later date. (ECF No. 22-1).

[3] Krevosh does not dispute any of the material facts relating to Westminster's discovery that she concealed evidence during the 2017 arbitration or the events that occurred thereafter. *See* (ECF No. 22).

or referenced in the settlement email (which Krevosh labels as a settlement agreement "contract") is misguided. The court has already determined that federal substantive law governs arbitrability; therefore, Nevada arbitration law and precedent is inapplicable to this dispute. *See Simula, Inc.*, 175 F.3d at 719.

Moreover, even if Nevada law were applicable, Krevosh's argument as to this point is premised on the notion that the setttlement email constitutes a valid settlement agreement that supersedes the parties' arbitration agreements. Because the court has already found that the settlement email is not a valid settlement agreement, Krevosh's argument is without merit. Accordingly, because the court finds that a valid arbitration agreement does exist between Westminster and Krevosh, the court will proceed to the second step of the analysis and determine whether the instant dispute falls within the scope of the arbitration agreements.

### ii. Scope of the arbitration agreements

The Ninth Circuit interprets arbitration agreements liberally and in favor of "the strong federal policy favoring arbitral dispute resolution." *See Simula, Inc.*, 175 F.3d at 720. "A court will not ordinarily except a controversy from coverage of a valid arbitration clause unless it may be said with positive assurance that the arbitration clause is not susceptible [to] an interpretation that covers the asserted dispute." *Bosinger v. Phillips Plastics Corp.*, 57 F. Supp. 2d 986, 990 (S.D. Cal. June 29, 1999) (quoting *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414, 419 (9th Cir. 1984)) (internal quotations omitted).

In *Simula, Inc. v. Autoliv, Inc.*, the Ninth Circuit interpreted language from an arbitration provision contained in a series of agreements relating to the development, licensing, and supply of an airbag system for BMW automobiles, which read:

> *All disputes arising in connection with this Agreement* shall be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce by three arbitrators appointed in accordance with the said rules.

*Simula, Inc.*, 175 F.3d at 720 (emphasis in original). There, the Ninth Circuit acknowledged that it had previously interpreted similar language liberally, and therefore held that the arbitration provision at issue applied to Simula, Inc.'s defamation claim in addition to its Sherman Act, Lanham Act, and misappropriation of trade secrets claims. *Id.* at 22–25. In doing so, the *Simula*,

James C. Mahan
U.S. District Judge

- 6 -

*Inc.* court held that "Simula's factual allegations need only 'touch matters' covered by the contract containing the arbitration clause," noting that courts construe the phrase "arising in connection with" more broadly than phrases such as "arising out of" or "arising under." *Simula, Inc.*, 175 F.3d at 721 (citation omitted).

Here, the language of Westminster and Krevosh's arbitration agreements are even broader than those examined by the Ninth Circuit in *Simula, Inc.* and cases before it. Indeed, Krevosh agreed to arbitrate "any controversy" between herself and Westminster without any requirement that the controversy stem from or relate to their contractual relationship. (ECF No. 17-3, 17-4, 17-5). Moreover, this dispute arises directly out of the 2017 arbitration, which Krevosh submitted to arbitration pursuant to "FINRA rule 12200, which requires a member or an associated person to arbitrate disputes arising out of the associated person or member's business activity *or the contract entered into between the parties.*" (ECF No. 17-1 at 1) (emphasis added). This shows Krevosh's awareness that the arbitration agreements applied to the 2017 arbitration, from which this dispute directly stems.

For the foregoing reasons, the court finds that the arbitration agreements do apply to the instant dispute. However, the court must still determine whether Westminster waived its right to arbitrate, as Krevosh asserts.

  b. *Waiver of the right to arbitrate*

"The right to arbitration, like other contractual rights, can be waived." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (citation omitted). "A determination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Id.* (internal quotations omitted). Accordingly, the party arguing waiver bears a "heavy burden of proof." *Id.* To demonstrate that the right to arbitrate has been waived, a party must show: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.*

Krevosh argues that Westminster knew of its existing right to compel arbitration because it actively participated in the "underlying [2017] arbitration." (ECF No. 22 at 16). This factor is

James C. Mahan
U.S. District Judge

1  undisputed.  *See* (ECF No. 27).  As to the second factor, Krevosh asserts that Westminster
2  engaged in acts inconsistent with its right to arbitrate by requesting that the 2017 arbitration case
3  be closed immediately following negotiation of the tentative settlement, and by filing its answer
4  and counterclaims seeking declaratory judgment in the instant case prior to filing its motion to
5  compel.  (ECF No. 22 at 18).

6  Finally, Krevosh argues that she was prejudiced by Westminster's delay in filing its
7  motion to compel, as such delay caused Krevosh to incur costs in filing her motion for summary
8  judgment and motion to dismiss Westminster's counterclaim.  *Id.* at 18–19.  Krevosh submits
9  that she is further prejudiced by the fact that Westminster is now privy to her legal arguments by
10  virtue of having filed its motion to compel after Krevosh filed her dispositive motions.  *Id.*

11  The court finds that Krevosh's argument on the waiver issue fails.  First, the fact that
12  Westminster requested that the 2017 arbitration case be closed following settlement negotiations
13  with Krevosh is inapposite.  While the 2017 arbitration and the instant dispute are directly
14  related, they are wholly separate proceedings and Krevosh has failed to demonstrate how closing
15  one arbitration proceeding in light of a pending settlement forever waives the right to arbitrate
16  subsequent disputes.

17  Second, while a party may waive its right to arbitrate by withholding the right in favor of
18  "actively litigating his [or her] case to take advantage of being in federal court," the Ninth
19  Circuit generally does not hold that the right has been waived absent "extended silence and
20  delay" coupled with significant efforts to proceed with the litigation.  *See, e.g.*, *Martin,* 829 F.3d
21  at 1125–26 (collecting cases wherein a party waived its right to arbitrate by filing dispositive
22  motions, participating in discovery, actively denying the intent to move to compel arbitration,
23  etc.).

24  Here, although Krevosh is correct that Westminster filed its answer and counterclaims
25  prior to filing its motion to compel, it nevertheless filed its motion less than one month after the
26  case was filed, and prior to the start of discovery.  Moreover, all pending dispositive motions in
27  this case have been filed by Krevosh—not Westminster.  *See* (ECF Nos. 12, 14).  Accordingly,
28  because Krevosh has not provided authority to support her contention that the filing of an answer

and counterclaims prior to filing a motion to compel constitutes a waiver of the right to arbitrate, the court will construe this factor in accordance with the strong federal policy favoring arbitration and in favor of Westminster.[4]

Finally, the court finds that Krevosh has failed to demonstrate that she has been prejudiced by Westminster's motion to compel arbitration. A party can demonstrate that it has been prejudiced if it has "expended considerable time and money due to the opposing party's failure to timely more for arbitration," if it would be required to relitigate issues "on the merits on which they have already prevailed in court," or if it can show that the opposing party received some advantage from the court that it could not have received in arbitration. *Id.* However, "[t]o prove prejudice, plaintiffs must show more than 'self-inflicted' wounds that they incurred as a direct result of suing in federal court contrary to the provisions of an arbitration agreement." *Martin,* 829 F.3d at 1126 (citation omitted).

Here, Krevosh cannot show that Westminster's approximately one-month delay in filing its motion to compel has caused her to expend "considerable" time and money. Moreover, the court has not yet ruled on any substantive motions; therefore, Krevosh would not be required to relitigate issues on which she has already prevailed in court.

Finally, although Krevosh asserts that she has been prejudiced by having filed dispositive motions that revealed her underlying legal arguments to Westminster, the court holds that these wounds are self-inflicted. Indeed, Krevosh elected to file her motion for summary judgment prior to the start of discovery. *See* (ECF No. 12). The court will not hold Westminster responsible for Krevosh's unorthodox litigation strategy.

In light of the foregoing, the court finds that Westminster has not waived its right to compel arbitration in this matter. Therefore, because the instant dispute falls within the scope of a valid arbitration agreement between the parties, Westminster's motion is granted.

. . .

. . .

---

[4] Aside from *Martin v. Yasuda*, Krevosh cites no other Ninth Circuit opinions in favor of her waiver argument. *See* (ECF No. 22). Instead, she cites a number of cases from the Nevada Supreme Court, which do not bind this court's decision. *Id.*

**IV.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Westminster's motion to compel arbitration (ECF No. 17) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that this action be, and the same hereby is, STAYED pending the close of arbitration.

IT IS FURTHER ORDERED that the parties shall file a joint status report or stipulation of dismissal within ten (10) days after the close of arbitration.

IT IS SO ORDERED.

DATED June 4, 2019.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**